UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA L. MILLER,

    Plaintiff,

v.                                          Case No. 1:07-cv-1112
                                              Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB). For the reasons stated below, the court recommends that this decision be reversed and remanded.

Plaintiff was born on March 13, 1955 and completed the 12th grade (AR 46, 111).[1] She alleges a disability onset date of November 1, 2001 (AR 46). Plaintiff had previous employment as a bookkeeper (AR 106). Plaintiff identified her disabling conditions as chronic daily headaches, esophagus problem with stomach discomfort, poor memory and depression (AR 105). At the administrative hearing, plaintiff and her counsel agreed to amend the disability onset date to December 2003 (AR 408-09, 422). However, the administrative decision does not reflect this new onset date (AR 16).

---

[1] Citations to the administrative record will be referenced as (AR "page #").

After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on March 29, 2007 (AR 14-21). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not

3

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. As an initial matter, the ALJ did not make an explicit finding regarding plaintiff's alleged onset date or the date on which she ceased to be engaged in substantial gainful activity (SGA). Rather, the ALJ found that plaintiff was not disabled in 2002 and 2003, because she had earnings during those periods which demonstrated her ability to engage in SGA (AR 16). While the ALJ made no finding as to whether plaintiff was engaged in SGA after that date, the record reflects that she earned only minimal amounts after December 2003 (i.e., $250.00 in 2004 and $807.00 in 2005) (AR 45). Although the ALJ did not make an explicit finding at step one, the fact that the ALJ proceeded to step two establishes that she successfully met her burden at step one. *See, e.g., May v. Heckler*, 607 F. Supp. 667 (W.D. Wis. 1985) "[a]lthough it is not explicit in the ALJ's findings, the fact that her decision came at step four or, alternatively, at step five, compels the conclusion she had determined that plaintiff had successfully negotiated steps one and two"). Nevertheless, on remand, the Commissioner should make appropriate findings regarding (1) the alleged disability onset date and (2) the date on which plaintiff ceased to be engaged in SGA.

Second, the ALJ found that she suffered from severe impairments of headaches, dumping syndrome,[2] and "post stomach surgery" (AR 16). At the third step, the ALJ found that

---

[2] "Dumping syndrome" is defined as "a complex reaction thought to be secondary to excessively rapid emptying of the gastric contents into the jejunum, manifested by nausea, weakness, sweating, palpitation, varying degrees of syncope, often a sensation of warmth, and sometimes diarrhea, occurring after ingestion of food by patients who have had partial gastrectomy and gastrojejunostomy." *Dorland's Illustrated Medical Dictionary* (28th Ed.) at 1628.

4

plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 18).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to lift 20 pounds maximally[,] frequently lifting ten pounds and occasionally lifting 20 pounds. She can stand, walk, and sit for six hours of an eight hour shift. She should avoid exposure to hazards.

(AR 19). The ALJ further found that based upon plaintiff's RFC, she could perform her past relevant work as an accounting clerk as actually and generally performed in the national economy (AR 21). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 21).

## III. ANALYSIS

Plaintiff raises two issues on appeal:

### A. The ALJ committed reversible error by not properly considering the opinions of plaintiff's treating physicians.

Plaintiff's arguments with respect to this issue lack specificity and are difficult to follow. Plaintiff apparently contends that the ALJ improperly rejected the opinions of her treating physicians because the ALJ "did not follow the rather obvious meaning of their [i.e., the treating physician's] findings" and improperly found that plaintiff was not credible.

5

### 1.     **Plaintiff's medical condition**

### a.     **Headaches**

Plaintiff has a history of headaches extending back to approximately 15 years (AR 163). In November 2001, plaintiff suffered intractable headaches and was hospitalized for four days (AR 16, 163, 244). An MRI was normal, her headache improved and she was discharged (AR 164, 173, 244). Based on plaintiff's testimony, she began working at home sometime after this incident (AR 408-09).

On December 26, 2003, plaintiff was admitted to the hospital for headaches (AR 145). She was evaluated by Kelly Berkheimer, Psy. D., for mental factors that may be contributing to her headache (AR 161). Dr. Berkheimer concluded that plaintiff had symptoms of "subclinical depression and anxiety that seemed secondary to stress and increased headache" (AR 162). Dr. Berkheimer recommendations included outpatient psychotherapy and monitoring of cognitive issues (AR 162). Plaintiff was discharged on December 31, 2003 (AR 143).

Plaintiff received treatment for the headaches throughout 2003 and 2004 with George Urban, M.D., of the Diamond Headache Clinic, Ltd. in Chicago, Illinois (AR 226-47). In November 2004, plaintiff saw her primary care physician, Dr. Prouty, in November 2004 for an intractable migraine, which required hospitalization (AR 348). Then, in December 2005, Zubair Shaikh, M.D., an internist and neurologist, evaluated plaintiff with respect to her headaches (AR 381-82). Plaintiff reported daily headaches that could not be treated with nonsteroidal medications (AR 381). A CT scan of the brain was normal (AR 381). The doctor prescribed Topamax and prophylactic therapy (AR 381). In January 2006, Dr. Shaikh noted that plaintiff still had frequent headaches on a nearly

daily basis (AR 378). The doctor felt that plaintiff's daily morning headache may be related to untreated sleep apnea syndrome (AR 378).

In March 2006, plaintiff reported that her headache decreased in severity but she had lower back pain (AR 377). Plaintiff was using a CPAP machine for sleep apnea (AR 377). In April 2006 plaintiff had improvement in her headaches, but continued to have low back pain with radiation to the lower extremities (AR 375). An MRI of the lumbar spine indicated degenerative disc disease at L5-S1 with a small disc protrusion but no convincing nerve impingement or spinal stenosis (AR 375). She continued CPAP therapy for sleep apnea (AR 375).In June 2006 plaintiff reported increased back and neck pain, frequent headaches and faitgue despite the CPPAP therapy (AR 374). The doctor noted significant psychomotor retardation (AR 374). Throughout October, November and December 2006, plaintiff's continued to have frequent headaches, along with neck and back pain (AR 371-73). In November 2006, the doctor noted that plaintiff was currently on nine medications: Ultram, Topamax, Cymbalta, Toradol, Toprol, Lidoderm, amitriptyline, Sandostatin and Klonopin (AR 372). An EMG of her upper extremities that month showed evidence of bilateral carpal tunnel syndrome (AR 371).

   **b.**  **Digestive problems**

Plaintiff also has a history digestive problems. In April 2003, she was evaluated at the Mayo Clinic by Jeffrey A. Alexander, M.D. (AR 133-36). She had three complaints: dysphagia,[3] epepigastric burning and nausea (AR 133-34). Her problems apparently arose after a 1999 surgery (a myotomy and Toupet fundoplication) to treat gastrointestinal reflux (AR 133). After this operation, she had significant dysphagia with solid food sticking (AR 133). She

---

[3] "Dysphagia" is defined as "difficulty in swallowing." *Dorland's* at 517.

underwent multiple esphogeal dilations to resolve the problem (AR 133).[4] She had additional surgery in February 2001 to allow easy access of the esophagus to the stomach, but continued to have recurrent dysphagia (AR 133). A thoracic surgeon, Claude Deschamps, M.D., did not believe that a re-operation would be justified (AR 126). Dr. Alexander developed a plan to treat her dysphagia with dilation and ruled out ulcers, but could not explain her nausea (AR 132). In May 2003, plaintiff reported that her swallowing was better after the dilation, but still felt that things were hanging up "a little bit" and that she may be having some regurgitation (AR 128). On November 6, 2003, Dr. Smith performed an endoscopy and dilation (AR 194). Plaintiff reported significant improvement after the procedure with just minimal dysphagia (AR 194).[5]

Dr. Smith performed a dilatation in February 2004 (AR 192). In March 2004, plaintiff was swallowing significantly better, but complained of increased reflux type problems (AR 190). Plaintiff underwent another dilatation in August 2004, and the next reported that her swallowing was somewhat better (AR 369-70).[6]

Plaintiff saw David Scheeres, M.D. in March 2005, complaining of increased difficulty with diarrhea, nausea and cramping (AR 316). The symptoms occur mainly with very sweet foods (AR 316). Dr. Scheeres found that plaintiff's symptoms were typical for "dumping syndrome," recommended consultation with a dietician and encouraged plaintiff to use Questran

---

[4] Plaintiff underwent several dilation procedures of her esophagus. The procedure is sometimes referred to in the medical records as a "dilatation," which is defined as "the condition, as of an orifice or tubular structure, of being dilated or stretched beyond the normal dimensions." *Dorland's* at 469.

[5] The court notes that plaintiff was working as a bookkeeper while undergoing these treatments from November 2001 through November 2003.

[6] Dr. Smithreports performing an "esophagogastroduodenoscopy" on August 13, 2004 (AR 370), which is defined as an "endoscopic examination of the esophagus, stomach, and duodenum." *Dorland's* at 581.

8

(AR 316). In June 2005, plaintiff was still suffering from "post vagotomy diarrhea"[7] and dumping (AR 315). She reported significant difficulty with diarrhea after meals and at times incontinence in bed (AR 315). She was taking up to eight Imodium pills per day to control the diarrhea (AR 315). In October 2005, plaintiff sought other strategies to control her diarrhea (AR 314). In July 2006, plaintiff continued to have significant difficulty with diarrhea, which occurred up to four times per day and during the night (AR 313). She experienced cramping, nausea and diarrhea after eating sweets or sugary foods, and the doctor suspected that the dumping syndrome was not being helped by the medication (Qestran and Imodium), and prescribed a low dosage of Sandostatin (AR 313). Finally, plaintiff underwent another dilatation in December 2005 (AR 325).

### b. State agency evaluations

On August 20, 2004, non-examining state agency physician Sadia Shaikh, M.D., noted plaintiff's diagnosis of migraine headaches, diabetes and dysphagia, and opined that she could lift 20 pounds occasionally, 10 pounds frequently, stand/walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and avoid all exposure to hazards (AR 267, 271).

In September 2004, Robert Griffith, Psy. D., examined plaintiff and diagnosed her as having a pain disorder related to psychological and medical factors (AR 275, 278). Plaintiff was cooperative, straightforward, alert and coherent (AR 276-77). Her mood was tense, but there was no evidence of significant anxiety or distress (AR 277). The next month, state agency psychologist

---

[7] "Vagotomy" is defined as "interruption of the impulses carried by the vagus nerve or nerves." *Id.* at 1791.

Rom Kriauciunas, Ph. D., reviewed the record and determined that plaintiff's somatoform disorder did not meet the requirements for a listed impairment (AR 283-94).

### c. Plaintiff's testimony

Plaintiff testified that from 1978 to 2003 she worked as a bookkeeper or accountant at a retail tire store, taking care of accounts payable, accounts receivable and payroll (AR 106). After her November 2001 hospitalization, plaintiff's employer allowed her to work out of her home (AR 408-09). For the next two years, she worked about 20 hours per week from home (AR 423). Plaintiff stopped working in December 2003, after her boss's wife learned the bookkeeping job (AR 422).

Plaintiff testified that she has headache pain every day, which she treats with Topamax, Cymbalta, Klonopin, and self-administered Toradol injections (AR 413, 426-27). In addition, the insurance company recently replaced her Ultram prescription for Vicodin (AR 413). The Topamax may be adversely affecting her memory (AR 424). She has suffered from the dumping syndrome since about 2002, after she had a "stomach wrap" surgery (AR 413-14). With the dumping syndrome, she has no warning before going to the bathroom and require extra clothes and undergarments (AR 414-15). She should wear special undergarments but tries to go without them, because of the smell (AR 414-15). She requires injections to stop the diarrhea (AR 430).[8]

Plaintiff testified that she cooks very little, relying on her adult children (AR 417). She described her activities as sewing, trying to attend church once a week, and attending bible study twice a week (AR 418-20). She can lift 10 pounds, stand up to 15 minutes, and walk about

---

[8] It appears that portions of the transcript have misidentified the speaker, at times identifying questions as "A" and answers as "Q". *See* AR 430-31.

a block (provided there was a bathroom nearby) (AR 420-21). Her employer allowed her to work at home in 2002 and 2003, but she only worked part-time, about 20 hours per week (AR 421-23). Plaintiff testified that she would miss about 12 workdays per month due to her headaches and stomach problems (AR 431).

### 2. Treating Physician

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

11

The only treating physician that plaintiff addresses by name is Dr. Scheeres.[9] However, plaintiff's argument does not address the ALJ's evaluation of the doctor's opinion. Rather, plaintiff merely refers to the doctor's April 2007 letter written to the Appeals Council, which was intended to clarify "some questions that were raised in the course of her disability hearing" (AR 400). In this letter, Dr. Scheeres states that he has treated plaintiff since 1999, that she has debilitating diarrhea, and that she has had only some measure of success in controlling the diarrhea through daily Sandostatin injections (AR 400).

When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988) (per curiam).[10] Sentence six provides that "[t]he court . . . may at any time order the additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is <u>material</u> and that there is <u>good cause</u> for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (emphasis added). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision,

---

[9] The majority of plaintiff's brief consists of a 15-page "statement of facts," which mentions plaintiff's treatment by various physicians since 2001. However, plaintiff's brief fails to develop legal arguments from those facts. A court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995).

[10] Section 405(g) authorizes two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (sentence-six remand). *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).

neither affirming, modifying, nor reversing the Commissioner's decision. *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

Plaintiff seeks a sentence-six remand, presumably for the Commissioner to review this letter. However, she fails to discuss, let alone demonstrate, the materiality and good cause necessary for such a remand. Moreover, this additional evidence is not a medical record generated during the course of plaintiff's treatment, but rather an opinion obtained from Dr. Scheeres to contest the ALJ's decision at the Appeals Council. The good cause requirement is not met by the solicitation of a medical opinion to contest the ALJ's decision. *See Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (observing that the grant of automatic permission to supplement the administrative record with new evidence after the ALJ issues a decision in the case would seriously undermine the regularity of the administrative process). Accordingly, there is no basis for this court to granted a sentence-six remand for review of Dr. Scheere's April 2007 letter.

### 3. Plaintiff's credibility

Next, plaintiff contends that the ALJ's credibility determination is not supported by the record. The court agrees. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993) (an ALJ's credibility determinations are accorded deference and not lightly discarded). Nevertheless, "while credibility determinations regarding subjective complaints rest with the ALJ,

13

those determinations must be reasonable and supported by substantial evidence." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Here, the ALJ found that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible. In support of this finding, the ALJ points to the treatment by Drs. Sheeres and Zubair Shaikh to demonstrate that plaintiff's persistent diarrhea and headaches were apparently cured (AR 20). The ALJ summarizes Dr. Sheeres as stating that plaintiff's daytime urgency and incontinence have improved through her medication (Questran and Imodium) (AR 20). Then, after noting that plaintiff's dumping syndrome "has not necessitated wearing special undergarments," the ALJ concluded that plaintiff embellished her symptoms at the hearing (AR 20). With respect to Dr. Zubair Shaikh, the ALJ simply states that "Topomax [sic] now controls the headaches" (AR 20).

Substantial evidence does not support the ALJ's findings. The ALJ's reasons for rejecting plaintiff's testimony regarding the extent of her symptoms are insufficient and not supported by the record. First, the ALJ did not fairly summarize Dr. Sheere's rather extensive treatment of plaintiff for diarrhea and other gastrointestinal problems. Second, the ALJ mischaracterized plaintiff's statements regarding special undergarments. Plaintiff did not testify that she did not need special undergarments; rather plaintiff testified that she is trying not to wear the undergarments because of the smell.[11] Furthermore, it appears that the ALJ relied on this

---

[11] Plaintiff testified that with her condition "you don't have any warning when you go [i.e., have a bowel movement]" and if she was in the car or shopping she would have to be prepared with extra clothes and undergarments (AR 414). When asked "Do you wear any special undergarments?" plaintiff replied in pertinent part:
> I think I should but I try not to cause I don't want to do that. I'm just, I think that if I do that it'll be smelly and stuff. So, I try just to go out and, it's smelly enough, you know, having to do all that stuff and [being] so self-conscious of it all and I just stayed home.

mischaracterized statement to discredit all of plaintiff's testimony. Third, the ALJ's conclusion that plaintiff's headaches are now controlled by Topamax is contrary to the medical records, which indicate that plaintiff still had frequent headaches in December 2006 despite her nine medication regimen (371-73). In addition, the ALJ does not address plaintiff's sleep apnea, which may be a contributory factor to the headaches or the alleged side effects of the Topamax.

Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. 405(g). On remand, the ALJ should re-evaluate plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms in light of her medical history.

> **B. The ALJ did not have substantial evidence to support his finding that plaintiff could have performed light work.**

Finally, plaintiff's brief contains no argument with respect to the ALJ's finding that she can perform light work. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). A court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). Accordingly, the court deems this argument waived.

---



(AR 415).

**IV.     Recommendation**

Accordingly, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should make determine the alleged disability onset date, determine the date on which plaintiff ceased to be engaged in SGA, and re-evaluate both plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms and her treating physicians' opinions regarding her ability to perform work related activities.  If the Commissioner determines that plaintiff has additional limitations that affect her RFC, then he should re-evaluate plaintiff's disability claim at steps three, four and five.


Dated:  October 30, 2008                         /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).